THE STATE, GEORGE B. VANDERPOOL, PROSECUTOR, v. DANIEL W. BONNELL.

The township committee, under the provisions of the act of 1867 (*Rev.*, p. 1160, §§ 91–96), can increase the valuation placed by the assessor upon real estate without notice to the owner.

---

On *certiorari*, bringing up a tax upon the property of the prosecutor, in Summit township, for the year 1885.

Vanderpool v. Bonnell.

Argued at November Term, 1886, before Justices REED, MAGIE and PARKER.

For the prosecutor, *J. R. English.*

For the defendant, *W. Cranston* and *A. I. Smith.*

The opinion of the court was delivered by

REED, J.   It appears that the assessor of the township of Summit fixed the value of the real estate of the prosecutor, lying in the township, at the sum of $3550.   The assessor met the township committee on the 18th of August, and, either at that meeting or a regularly adjourned meeting held before the last Saturday in August, an additional $2000 was added to the value of the said real estate.   Two bills were sent to the prosecutor together, one for $3050 and another, with the words "added by the committee," for $2000.   The first bill was paid by the prosecutor.   He sent a communication by letter to the commissioners of appeal complaining of the increased valuation, but the board refused to take any action toward a reduction.

Two grounds are presented for the consideration of this court upon which a vacation of the increased valuation is asked : first, that it is an overvaluation of the real estate of the prosecutor in Summit township ; second, that the increase was made by the township committee without legal warrant.

In regard to the first ground, the evidence taken in the cause leaves no doubt in my mind.   The property was, at the time when the assessment is supposed to have been made, namely, on the 20th of May, 1885, worth more than $5050.   There were thirty-three acres of land, worth from $50 to $75 an acre.   Mr. Vanderpool had commenced to build upon it quite a handsome house in the spring or early summer of 1884. The contract for the mason work of this house was for the payment of $4000, and for the carpenter work $5375.   He had paid, up to May 20th, 1885, in the neighborhood of $8000 on these two accounts of carpenter and mason work.   The

house was so far finished at that time as to permit the prose-
cutor to reside in it, but there were permanent doors to be put
in, plumbing to be completed, and painting and general inside
finishing to be done. The prosecutor says that the building
was insured at that time for $8000 or $10,000. Then there
were some outbuildings, though not of any great value. Now
a glance at this statement from the mouth of the prosecutor
himself will, I think, lead any one to the conclusion that an
assessment for $5050 for this house, outbuildings and land
was moderate. There is no ground for the claim that the ad-
ditional $2000 was an overvaluation.

The second ground of objection is that the township com-
mittee has no authority to raise the valuation. The power to
do so (if it exists at all) is found in the act of 1867, now a
part of the Tax act, contained in the Revision. *Rev., p.* 1160,
§§ 91–96. That act provides that the township committee
shall meet at their usual place of meeting, on the third Tues-
day of August of each year, for the purpose of examining,
revising and correcting the duplicate of assessment. The as-
sessor is directed to attend such meeting with his duplicate,
and remain, for the purpose of explaining the said duplicate
and assisting said committee in the discharge of the duties re-
quired of them by the act. The committee is required to com-
plete its examination, revision and correction before the last
Saturday in August. Power is given to any member of a
township committee to issue subpœnas to bring before said
meetings persons and papers to be examined in relation to said
assessment.

Two questions arise as to the power of the township com-
mittee in reference to the matters involved in the present case.
Has the committee the power to increase the valuation of prop-
erty fixed by the assessor? If so, is the person affected by
such increased valuation entitled to notice?

In reviewing the method by which omissions or errors of
an assessor could be corrected, we find that under the act of
1848 (*Rev., p.* 1148, § 55) the collector could, at any time
before the meeting of the commissioners of appeal, enter the

name of any person with a proper assessment, who may have been omitted, giving such person immediate notice of such entry and of the time and place of the next meeting of the commissioners of appeals. Power was also, in the said act, given to the commissioners to make additions upon complaint of some person, and upon five days' notice to the party interested. By the act of 1866 (*Rev.*, *p.* 1158, § 21), the collector, immediately after having received his duplicate from the assessor, was directed to submit the same to the township committee, whose duty it was to examine the same, and if they had reason to believe that any one was assessed too low, or omitted, they should direct the collector to notify such person that complaint would be made to the commissioners of appeal. It was made the duty of the collector to attend the meetings of the board of commissioners and present the complaints.

In the following year the act was passed which is first above set out, and which was in force at the time when the present assessment was made. The township committee, it is perceived, first appears in connection with the assessment of taxes, under the provisions of the act of 1866. But under that act the committee had no power to assess or to interfere with the assessments, as they stood upon the duplicate, as it came to the hands of the collector. The committee could only direct the collector to notify taxpayers that complaint would be made to the commissioners of appeal, who made the assessment. For what purpose was the act of 1867 passed providing that before the duplicate passed into the hands of the collector it should be laid before the township committee for its examination, revision and correction? It was to place in the hands of the township committee complete control over the assessment.

It was intended to substitute for the awkward method of correcting an erroneous duplicate after it passes from the hands of the assessor, a method of revision and correction before the duplicate was delivered to the collector. The assessor was still to do his work as before, but his work did not become an assessment until it passed through the hands of the committee. And the power of the committee under the act is plenary.

Vanderpool v. Bonnell.

It is as extensive as formerly was that of the assessor himself. Included in it, therefore, is the power to add names to the list of taxpayers, and increase or diminish the amount of property taxed and its valuation. Indeed, these are the only important duties of the assessor. Aside from the allowance of deductions for debts, the other duties are matters of computation, such as apportioning the tax to the several objects for which it is levied. "Revising and correcting the duplicate" would be words of no significance if they did not apply to the selection of names, the selection of property, and the correction of the values of property. For what else was the power in such terms given, as also the power to compel the presence of persons or papers at the examinations of the duplicate? I have no doubt that the power to raise a valuation made by the assessor was lodged in the township committee.

Nor, secondly, have I any doubt that it is the object of the act of 1867 that this shall be done without notice to the taxpayer. No notice is required by the act. This is rendered more significant from the fact that the previous acts expressly required notice as a condition upon which the assessor's duplicate could be altered. The reason for the absence of the requirement of notice in the last act is because in it the proceedings of the township committee are considered a part of the original assessment. It is a continuation and completion of the work of the assessor. As no notice has ever been required as a condition upon which the original assessment rested when made by the assessor, so there was no reason for notice when the township committee does a part of the work formerly done by the assessor. Nor is the taxpayer deprived of his opportunity for redress for any questioned act of the committee. The duplicate, after completion by the committee, goes to the collector, the bills are served upon the taxpayer, with a notice of the time and place of meeting of the commissioners of appeal. *Rev.*, *p.* 1142, § 11 ; *p.* 1159, § 86.

This conforms to the general scheme by which the right of the taxpayer to have a hearing is secured. It is not customary to give a hearing before the assessment is made, but afterwards,

before a board of review, which may be either the assessors themselves or a separate board of review. Of the meeting of that court the taxpayer must be informed, either by notice, personal or constructive, or by some general law which fixes the time and place of meeting. *Cooley on Taxation* 365; *State, Vail's Ex'rs, pros., v. Runyon,* 12 *Vroom* 98.

The board of review in this state is the board of commissioners of appeal. The legislature did not, by the act of 1867, intend to introduce either the anomalous feature of awarding a hearing before the assessment was made, or the equally anomalous feature, in tax proceedings, of a double court of review. I think, therefore, that the action of the township committee in the present case was legal and the tax should be affirmed, with costs.